IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT

V.                        CASE NO. 5:22-CR-50012-004

ALEXANDER ITUMA                        DEFENDANT/PETITIONER

## MEMORANDUM OPINION AND ORDER

Before the Court are Alexander Ituma's *pro se* Motion to Vacate under 28 U.S.C. § 2255 (Doc. 305), the Government's Response in Opposition (Doc. 312), and Mr. Ituma's Reply (Doc. 313). The undersigned presided over the jury trial and sentencing of Mr. Ituma and his co-defendants and is familiar with all evidence of record, victim statements, loss calculations, and sentencing considerations. The undersigned also personally observed the performance of Mr. Ituma's trial counsel and sentencing counsel. Under the circumstances, no evidentiary hearing is necessary to resolve the motion, as the record coupled with the undersigned's firsthand observations conclusively demonstrate that Mr. Ituma is not entitled to relief. *See United States v. Ledezma-Rodriguez*, 423 F.3d 830, 835–36 (8th Cir. 2005). For the reasons stated below, the Motion is **DENIED**.

## I. BACKGROUND

On August 21, 2023, Mr. Ituma and three co-defendants were convicted by a jury of eleven separate charges, including wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering.[1] Attorney John Wesley Hall was Mr. Ituma's trial attorney. After Mr. Ituma was convicted, Mr. Hall withdrew, and Mr. Ituma hired attorneys

---

[1] Co-defendant John Nock was separately indicted and convicted of a twelfth count of engaging in monetary transactions in property derived from specified unlawful activity.

1

Kimberly Weber and Christopher Tod Brown to represent him at sentencing. Mr. Ituma's guideline sentencing range was 168 to 210 months. The Court varied downward and imposed a carceral sentence of 100 months. Mr. Ituma appealed both the underlying conviction and sentence, and the Eighth Circuit appointed attorney Linda Sheffield to represent him on appeal.

In the Motion now before the Court, Mr. Ituma contends that all four of his attorneys were constitutionally ineffective. Further, he insists the Court violated his right to due process by making findings at sentencing about the scope of loss and number of victims when those facts—in his view—had not been established at trial and were "still in flux." (Doc. 305, p. 37). He also accuses the Court of failing to impose a sentence that adequately captured his particular conduct and role in the overall conspiracy. Finally, he asserts that "cumulative prejudice" he suffered at all phases of litigation warrants habeas relief. *See id.* at pp. 42–44.

The trial of Mr. Ituma and his co-defendants lasted nine days. During that time, more than a dozen witnesses testified and the Government introduced thousands of pages of financial records, emails, and other documents into the record. On the tenth day of trial, the jury deliberated and returned guilty verdicts on all charges. The jury was persuaded that the defendants conspired with one another and with unindicted conspirators worldwide to engage in an international wire fraud and money laundering scheme. According to the evidence, the scheme resulted in more than $18 million in actual losses to multiple victims, both domestically and abroad. Some of the conspirators held themselves out to be experienced investors; they solicited investments from domestic and foreign victims between 2013 and 2021 and promised them significant

returns on their investments over short periods of time. Mr. Ituma entered the conspiracy by at least March 13, 2015, and served as the group's money launderer. His role was to move victim funds from his domestic business accounts to his overseas business accounts for a large fee or commission—paid to him by his co-defendants directly or subtracted from the victim funds. When Mr. Ituma would move victim funds abroad, they became almost impossible to trace and recover. He personally profited from the scheme in the amount of $315,503.66. *See* Doc. 244.

The undersigned can attest to the fact that Mr. Ituma's trial attorney John Wesley Hall had a clear trial strategy from the beginning: distance Mr. Ituma from his co-defendants and minimize his role in the overall scheme. Mr. Ituma did not deal directly with victims or otherwise directly solicit investment funds for the scheme; however the Government established that his services as money launderer were vital to the scheme's success. The Government traced victim funds to Mr. Ituma's business accounts, including accounts located in Hong Kong, and the evidence showed that Mr. Ituma was an active participant in the overseas transfers. *See* Doc. 112, p. 260. Though he told the jury when he took the stand[2] that he was merely an "escrow agent" in these transactions, he admitted during cross-examination that he never spoke with any victims before transferring their funds overseas. Instead, he communicated exclusively with his co-defendants and unindicted conspirators regarding the movement of the funds and details of the scheme; he understood how the scheme worked and admitted he knew that *none* of the victims ever received returns on their investments. *See id.* at pp. 275 & 297.

---

[2] Mr. Ituma took the stand freely and with the full understanding of the possible negative consequences of doing so. *See* Doc. 108, pp. 282–85 (Court's colloquy with all defendants concerning their right to testify).

3

Soon after Mr. Ituma and his co-defendants were convicted, the Court held a hearing on whether to order the forfeiture of Mr. Ituma's pretrial bond and remand him into custody pending sentencing. His bond prohibited him from transferring or liquidating any assets without his probation officer's permission. *See* Doc. 34. However, Mr. Ituma's probation officer discovered that he had been secretly transferring hundreds of thousands of dollars to an individual or individuals overseas. *See* Doc. 204. He admitted this conduct. *See* Doc. 288, p. 9. He also said he would try to claw back the funds before sentencing, but he never did. *See id.* at p. 31. This behavior—secreting large sums of money in bank accounts overseas—was exactly what Mr. Ituma did during the conspiracy. The Court therefore revoked his pretrial release, ordered the bond forfeited, and remanded Mr. Ituma into custody pending sentencing.

At around this time, Mr. Ituma discharged Mr. Hall and hired two new lawyers, Kimberly Weber and Christopher Tod Brown. They lodged fifty-one objections (Doc. 195) to the Presentence Investigation Report ("PSR"), including substantive challenges to the criminal history calculation, number of victims, and victim restitution amount. Ms. Weber and Mr. Brown also filed a sixteen-page sentencing memorandum that argued in favor of a downward variance from the guideline range due to Mr. Ituma's lack of direct contact with victims. *See* Doc. 212. Partly as a result of counsel's advocacy, the Court varied downward 68 months from the bottom of the guideline range when imposing sentence. Mr. Ituma was also ordered to pay a mandatory special assessment of $1,100 and restitution to fourteen victims—jointly and severally with his co-defendants—in the total amount of $18,502,916.65. (Doc. 242).

Mr. Ituma appealed his sentence, and the Eighth Circuit appointed attorney Linda Sheffield to represent him. After reviewing all court papers and transcripts, she was unable to identify any colorable issues to appeal, so she filed an *Anders* brief. *See Anders v. California*, 386 U.S. 738 (1967). Mr. Ituma was granted permission to file a *pro se* supplemental brief raising any additional issues he wanted the Court to consider, but he declined.[3] The Eighth Circuit independently reviewed the trial evidence and found it sufficient to support Mr. Ituma's conviction on all eleven counts. *See* Doc. 299-1, p. 2. Aside from a scrivener's error regarding one victim—which the Court corrected, *see* Doc. 300—Mr. Ituma's guideline calculation and sentence were also fully affirmed on appeal. *See* Doc. 299-1.

## II. LEGAL STANDARD

28 U.S.C. § 2255 allows individuals serving criminal sentences to challenge their convictions, but relief "is reserved for transgressions of constitutional rights and for a narrow range of injuries that . . . if uncorrected, would result in a complete miscarriage of justice." *United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996). "[P]ost-conviction relief will not be granted on a claim of ineffective assistance of trial counsel unless the petitioner can show not only that counsel's performance was deficient but also that such deficient performance prejudiced his defense." *Saunders v. United States*, 236 F.3d 950 (8th Cir. 2001) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). To establish deficiency, the defendant must show "counsel's errors were so serious that counsel was

---

[3] Mr. Ituma did file a motion requesting new counsel on appeal, arguing generally that he disagreed with Ms. Sheffield that there were no substantive appealable issues. *See United States v. Ituma*, No. 24-1715 (8th Cir. 2024). He never developed these arguments through a supplemental brief.

not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. To establish prejudice, the defendant "must prove a reasonable probability exists that, but for counsel's errors, the results of the proceeding would have been different." *DeRoo v. United States* 223 F.3d 919, 925 (8th Cir. 2000). If the defendant cannot prove prejudice, the Court "need not address whether counsel's performance was deficient." *Id.*

### III.  DISCUSSION

### A.  Ineffective Assistance of Counsel

### 1.  *Trial Counsel*

Mr. Ituma claims Mr. Hall was deficient because he failed to review discovery with him and failed to prepare him to testify. However, Mr. Ituma admits that Mr. Hall made the discovery materials available for review and that Mr. Ituma actually reviewed these materials—which he describes as "[l]arge volumes of documentary evidence that formed the basis of the Government's cross examination." (Doc. 305, p. 21). He further admits that he reviewed the trial evidence shortly before taking the stand in his own defense. *Id.*

Mr. Ituma also faults Mr. Hall for failing to conduct re-direct examination after the Government's damaging cross. However, Mr. Hall explains in his Affidavit that he believed "further explanation [on redirect] was a potential minefield with the serious potential of opening [Mr. Ituma] up to certain further cross-examination on his explanations, which were never fully satisfactory anyway." (Doc. 312-1, p. 5). Mr. Ituma does not challenge Mr. Hall's explanation, nor does Mr. Ituma assert that Mr. Hall failed to engage in re-direct because of a lack of preparation or investigation. Instead, Mr. Ituma's disagreement with Mr. Hall is obviously a strategic one, and "strategic choices made after investigation are

virtually unchallengeable" in a § 2255 action. *Jackson v. United States*, 956 F.3d 1001, 1007 (8th Cir. 2020).

Next, Mr. Ituma suggests that Mr. Hall should have challenged the Government's charts summarizing the evidence. Mr. Ituma does not explain exactly how the charts should have been challenged. Moreover, the Court would have deemed such a challenge unmeritorious because the charts were admissible and the underlying documents on which the charts were based were in evidence. *See Anderson v. Goeke*, 44 F.3d 675, 680 (8th Cir. 1995) (noting that an attorney is not constitutionally deficient for failing to object to the introduction of admissible evidence).

Finally, Mr. Ituma argues that Mr. Hall should have tried harder to distinguish Mr. Ituma from his co-defendants, in terms of culpability and role in the offense. The Court is not sure what more Mr. Hall could have done in this regard. As stated previously, his trial strategy—from opening statement to closing argument—was to try to distance Mr. Ituma from the other defendants and persuade the jury of Mr. Ituma's ignorance of the overall scheme. Unfortunately for Mr. Ituma, the jury saw through this strategy and convicted him. The Court does not find it reasonably probable that Mr. Ituma would have been acquitted if Mr. Hall had asked more questions or made more objections, as the documentary evidence coupled with Mr. Ituma's own admissions and demeanor on the stand assured his conviction. Accordingly, the Court finds that Mr. Hall was not constitutionally defective under *Strickland*.

### 2. *Sentencing Counsel*

Mr. Ituma also criticizes his sentencing counsel, Ms. Weber and Mr. Brown, for failing to meaningfully litigate the loss amount and number of victims and for withdrawing

potentially meritorious objections. As noted, Ms. Weber and Mr. Brown lodged over fifty objections to the PSR on Mr. Ituma's behalf, the vast majority of which were unmeritorious simply because Ms. Weber and Mr. Brown lacked familiarity with the trial record and the Court's trial rulings. Ms. Weber withdrew one objection concerning an enhancement for sophisticated means because she attended a co-defendant's sentencing hearing and listened to the Court's detailed explanation for overruling that same objection. *See* Doc. 291, p. 15. It goes without saying that Ms. Weber did not err in withdrawing the objection; doing so saved the Court valuable time.

Ms. Weber argued in her sentencing memo and at the hearing that Mr. Ituma deserved a downward variance due to his role in the offense.[4] She and Mr. Brown also vigorously contested the number of victims and intended and actual loss amounts attributable to Mr. Ituma. Over the course of the three-hour sentencing hearing, the Court engaged in a paragraph-by-paragraph analysis of each victim's loss before finding in favor of the Government. The fact that Mr. Ituma disagrees with the Court's findings does not mean his counsel was deficient or that the amount of victim restitution was unsettled or "in flux."

Lastly, it bears mentioning that the downward variance Mr. Ituma received was not a foregone conclusion—particularly given the magnitude of the fraud, his clear involvement, his adamant insistence during his allocution that he did nothing wrong, and his troubling post-indictment, pretrial money transfers to unindicted conspirators

---

[4] To be clear, Mr. Ituma was ineligible for a minor role reduction as a matter of law under U.S.S.G. § 3B1.2(b), given the facts developed at trial. Therefore, counsel did not commit error by failing to move for such a reduction, and Mr. Ituma cannot show prejudice under *Strickland* because he received a significant downward variance due to his role.

8

overseas. *See* Doc. 291, pp. 58–59, 88. Though he complains about sentencing counsel's performance now, the fact remains that at the time of sentencing—before sentence was pronounced—Mr. Ituma confirmed he was "[v]ery satisfied" with Ms. Weber and Mr. Brown and said "wish[ed] [he] had [them]" represent him at trial from the "very beginning," (Doc. 291, pp. 4 & 49). These lawyers were not constitutionally defective under *Strickland*.

### 3. *Appellate Counsel*

Mr. Ituma's weakest argument concerns his criticism of appellate counsel Ms. Sheffield, who filed an *Anders* brief. Under the Supreme Court's holding in that case, the appeals court is required to independently review the case and determine if any nonfrivolous appeal issue exists; if such an issue is identified, the court will "direct counsel to more fully brief the issue." *United States v. Davis*, 508 F.3d 461 (8th Cir. 2007) (citing *Anders*, 386 U.S. at 744). Here, the Eighth Circuit "independently reviewed the record," and in doing so discussed the sufficiency of the evidence at trial, the loss amount and number of victims, and the enhancements to the guideline calculation adopted by this Court before concluding there were "no remaining non-frivolous issues for appeal." (Doc. 299-1, p. 3). This finding establishes that even if Ms. Sheffield erred in failing to raise a specific issue on appeal, Mr. Ituma suffered no prejudice in view of the Eighth Circuit's independent review. Accordingly, Ms. Sheffield was not constitutionally defective under *Strickland*.

### B. Due Process Violations

Mr. Ituma's next arguments are directed to the Court. First, he contends the Court violated his right to due process in making findings about the number of victims and amount of restitution without the benefit of reliable evidence. The Court disagrees. Its

findings were meticulously justified and affirmed on direct appeal. Next, Mr. Ituma believes the Court violated his rights by failing to make an individualized assessment of his role in the offense and imposed a sentence based on "generalized conspiracy assumptions." (Doc. 305, p. 38). Again, the Court disagrees. Mr. Ituma was convicted by a jury of wire fraud, conspiracy to commit wire fraud, and conspiracy to commit money laundering. The Court was obligated to consider the facts of the conspiracy in sentencing him, as well as any relevant conduct. In point of fact, the Court varied downward in part because of Mr. Ituma's attenuated relationship with the victims.[5] As the due process arguments he raises lack merit, they cannot form the basis for habeas relief.

### C. Cumulative Harm

Mr. Ituma's final argument is that the cumulative effect of his counsel's errors, the Court's errors, and all resulting prejudice provide an independent basis for habeas relief. The Eighth Circuit has "repeatedly rejected the cumulative error theory of post-conviction relief." *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008). Moreover, no cumulative harm has been established since all individual arguments lack merit.

### IV. CONCLUSION

**IT IS ORDERED** that Mr. Ituma's *pro se* Motion to Vacate under 28 U.S.C. § 2255 (Doc. 305) is **DENIED.**

**IT IS SO ORDERED** on this _____ day of July, 2026.

TIMOTHY L. BROOKS
CHIEF UNITED STATES DISTRICT JUDGE

---

[5] For reference, as compared to Mr. Ituma's sentence of 100 months, co-defendant Brian Brittsan received 120 months, co-defendant Kevin Griffith received 150 months, and co-defendant John Nock received 250 months. *See* Docs. 245, 248, 250.